# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 15 |
|  | ) | Case No. 26-10554-EDK |
| ALEXANDER ZHELEZNYAK, | ) |  |
|  | ) |  |
| Debtor in a Foreign Proceeding | ) |  |
|  | ) |  |

## MEMORANDUM OF DECISION

Before the Court is the "Chapter 15 Petition for Recognition of a Foreign Proceeding" (the "Petition") filed by Oleg Ogarkov ("Ogarkov" or the "Petitioner"), the bankruptcy trustee in Alexander Zheleznyak's ("Zheleznyak") pending bankruptcy proceedings in Russia (the "Russian Proceeding"). The Petitioner asks this Court to recognize the Russian Proceeding under Chapter 15 of the United States Bankruptcy Code,[1] either as a "foreign main proceeding" or a "foreign nonmain proceeding," and requests additional relief upon recognition of the Russian Proceeding.

## I.    FACTS AND TRAVEL OF THE CASE[2]

Zheleznyak is a Russian and Israeli citizen and was a co-founder of Probusinessbank, a large Russian bank. In 2014, Probusinessbank's banking license was revoked after investigation by the Russian Central Bank. Shortly after, Probusinessbank was declared bankrupt, and the

---

[1] *See* 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). All statutory references are to provisions of the Bankruptcy Code unless otherwise stated.

[2] The facts are drawn from the Petition, the declaration of Ogarkov, and the declaration of Ksenia Koneva ("Koneva"), a Russian attorney with experience in Russian bankruptcy proceedings. The Court notes that Zheleznyak disputes many of these facts, particularly those concerning the circumstances surrounding his departure from Russia, subsequent criminal proceedings, and the Russian Proceeding.

1

Deposit Insurance Agency (the "DIA")[3] was appointed as the trustee for Probusinessbank's bankruptcy. Zheleznyak and other directors of the bank, including the bank's other co-founder, Sergei Leontiev ("Leontiev"), were declared responsible for the bank's collapse due to mismanagement and embezzlement. Zheleznyak and Leontiev were accused of embezzling substantial amounts of money and transferring the money to various countries. Criminal cases were initiated in connection with the embezzlement allegations, but no judgment has entered against Zheleznyak because he is not present in Russia. Zheleznyak ceased maintaining a registered residence in Russia in January 2016 (when he moved to Israel) and now resides in the United States.

The Petitioner alleges that Zheleznyak began to position himself as a political dissident in an attempt to shield himself from efforts to recover the funds, associating himself with the Anti-Corruption Foundation ("ACF"), a political organization that was affiliated with now-deceased Russian opposition leader Alexei Navalny. Until 2024, Zheleznyak was listed as a director and registered agent of ACF in the United States.

The Russian Proceeding commenced on August 15, 2019, when Probusinessbank's application to declare Zheleznyak bankrupt was granted. Zheleznyak has two creditors in the Russian Proceeding: Probusinessbank and Boris Zuev. Liquidation of Zheleznyak's assets was initially set for a period of six months but remains incomplete after numerous extensions.

Zheleznyak and his wife currently reside in Newton, Massachusetts. Zheleznyak owns property through an LLC that was incorporated in South Dakota by his wife, and which is now owned by his father-in-law. Zheleznyak owns three cars, all registered at a property owned by Zheleznyak and his wife in Chestnut Hill, Massachusetts. Zheleznyak is the director of Intervale

---

[3] The DIA has been described as "a Russian governmental bankruptcy receiver." *Deposit Ins. Agency v. Leontiev*, Case No. 17-MC-00414 (GBD)(SN), 2018 WL 3536083, at *1 (S.D.N.Y. July 23, 2018).

2

Management, Inc., an entity registered in Virginia with a principal business address that is the same as Zheleznyak's Newton residence.

Zheleznyak is a registered attorney in Russia and a member of the Moscow City Bar Association. Information from Russian tax authorities indicates that, between 2016 and 2019, Zheleznyak received income of at least 1,500,000 Russian rubles for work as an attorney. Zheleznyak is affiliated with a law firm founded by his brother and may be affiliated with a fintech company based in Cyprus. Additionally, Zheleznyak owns property in Moscow. According to Koneva's declaration, and exhibits attached thereto, although Zheleznyak transferred the property in 2005, he currently owns the property as the result of a 2023 court order issued in a Russian legal proceeding (similar to an avoidance action under the Bankruptcy Code) initiated by Ogarkov to unwind multiple subsequent real estate transfers.

II.     POSITIONS OF THE PARTIES

The Petitioner contends that the Russian Proceeding should be recognized under Chapter 15 of the Bankruptcy Code. As a threshold matter, the Petitioner says that the Russian Proceeding is a "foreign proceeding" under § 101(23), that Ogarkov is an appropriate "foreign representative" under § 101(24), that Zheleznyak is qualified to be a debtor under § 109(a), and that the petition meets the requirements of § 1515.

The Petitioner argues that the Russian Proceeding is a foreign main proceeding under §§ 1517(b)(1)[4] and 1502(4) because Zheleznyak's center of main interest ("COMI") is in Russia. To support this argument, the Petitioner relies on the following facts: Zheleznyak (1) is a Russian

---

[4] In the Petition, the Petitioner incorrectly cites to § 1517(b)(2) when quoting the language of § 1517(b)(1) in the argument related to "foreign main proceeding." The Court assumes the Petitioner intended to rely on § 1517(b)(1) for that portion of the Petitioner's argument.

citizen; (2) owns property in Russia; and (3) is a registered attorney in Russia, a member of the bar in Moscow, and may have an interest in a Russian law firm.  The Petitioner additionally says that both of Zheleznyak's creditors are located in Russia, that their claims are connected with Zheleznyak's prior business activity in Russia, and that Zheleznyak's only known source of income is from the practice of law in Russia between 2016 and 2019.[5]

In the alternative, the Petitioner argues that the Russian Proceeding is a foreign nonmain proceeding under §§ 1517(b)(2) and 1502(2) because, "at all relevant times," Zheleznyak carried out nontransitory economic activity in Russia and therefore has an "establishment" in Russia within the meaning of § 1502(2).  To support this argument, the Petitioner again relies on Zheleznyak's status as an attorney in Russia, Zheleznyak's income earned in Russia from legal work through 2019, and Zheleznyak's ownership of property in Russia.

Finally, the Petitioner argues that, upon recognition, under § 1520, the Petitioner is entitled to the application of certain Bankruptcy Code provisions, including the automatic stay, and asks the Court to grant additional relief under § 1521, including allowing the Petitioner to obtain discovery regarding Zheleznyak's assets, affairs, rights, obligations, or liabilities.

Zheleznyak largely objects to and disputes the factual allegations contained in the Petition, particularly those related to the underlying reasons for Zheleznyak's departure from Russia, the propriety of the Russian criminal proceedings, and the independence of the Russian Proceeding from the Russian criminal proceedings.

---

[5] The Petitioner further notes that an Israeli court recognized the Russian Proceeding as a foreign main proceeding under Israeli law, appearing to imply that this Court could rely on the Israeli recognition to recognize the Russian Proceeding under Chapter 15 of the Bankruptcy Code.  However, the Petitioner failed to develop that argument and it is therefore deemed waived.  *See Miranda v. Banco Popular De Puerto Rico (In re Cancel)*, 7 F.4th 23, 27 n.3 (1st Cir. 2021) ("[I]issues . . . unaccompanied by some effort at developed argumentation[] are deemed waived." (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

As to the merits, Zheleznyak contends that, even assuming the facts alleged in the Petition to be true, the Petitioner has not set forth sufficient facts to warrant recognition of the Russian Proceeding under § 1517, either as a foreign main proceeding or a foreign nonmain proceeding. Zheleznyak argues that the Russian Proceeding is not a foreign main proceeding because his COMI is in the United States (and not Russia) and his alleged ties to Russia are manufactured, trivial, and not sufficient to establish a COMI in Russia under existing case law. Zheleznyak argues that the Russian Proceeding is also not a foreign nonmain proceeding because he lacks an "establishment" in Russia.

Further, Zheleznyak argues that recognition of the Russian Proceeding would be manifestly contrary to United States public policy under § 1506 because the Russian Proceeding is corrupt, lacks procedural fairness that cannot be cured, and deprives Zheleznyak of due process rights. Finally, Zheleznyak argues that the additional relief sought pursuant to § 1521 is inappropriate in this proceeding.

III.   DISCUSSION

A.   Notice and a Hearing

As an initial matter, the Court notes that § 1517(a) provides for recognition of a foreign proceeding (under certain circumstances) "after notice and a hearing," and the Court concludes that notice and an opportunity for an appropriate hearing have been provided in this case. For purposes of the Bankruptcy Code, the phrase "after notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(a)(1)(A). The Petitioner filed the

5

twenty-page Petition, supported by Ogarkov's six-page declaration (to which four exhibits were attached) and Koneva's twenty-page declaration (to which nineteen exhibits were attached).

On April 30, 2026, the Court held a non-evidentiary hearing to consider recognition of the Petition, at which the Petitioner's counsel and Zheleznyak's counsel were afforded unlimited time to present their arguments.  At the hearing, Petitioner's counsel insisted that an evidentiary hearing was necessary for the Court to determine whether recognition should be granted.  When asked for a proffer as to the information sought through an evidentiary hearing, the Petitioner stated that he intended to cross-examine Zheleznyak and introduce testimony from Ogarkov and Koneva to dispute assertions presented by Zheleznyak's opposition.  However, because the Court has accepted all the assertions set forth in the Petition and declarations as true for the purposes of this decision, the Court finds that the hearing held on April 30, 2026 was sufficient and appropriate in the particular circumstances and that no further evidentiary hearing is required.

## B.      Chapter 15 Statutory Requirements

For a petition for recognition to be granted under Chapter 15, several conditions must be met.  Section 1517(a) requires a bankruptcy court to recognize a foreign proceeding if "(1) such foreign proceeding . . . is a foreign main proceeding or a foreign nonmain proceeding within the meaning of § 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of § 1515."  11 U.S.C. § 1517(a).  "The ultimate burden of proof on the requirements of recognition is on the foreign representative."  *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1021 (5th Cir. 2010) (citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 398 B.R. 325, 334 (S.D.N.Y. 2008)).

6

As a threshold matter, under § 1517(a), the proceeding for which recognition is sought must be a "foreign proceeding" within the meaning of § 101(23).[6] *See* 11 U.S.C. § 1517(a). Zheleznyak does not dispute that the Russian Proceeding is a "foreign proceeding" within the meaning of that section. Zheleznyak also does not dispute that the Petitioner is a "foreign representative" within the meaning of § 101(24),[7] and is a "person or body" as required by § 1517(a)(2).

With regard to the third element (that a petition for recognition meets the requirements of § 1515), that requirement "is purely procedural in nature." *Ran*, 607 F.3d at 1021 (citing 11 U.S.C. § 1517(a)(3)).  Section 1515 requires the foreign representative to file a petition for recognition, 11 U.S.C. § 1515(a), which must be accompanied by (1) a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative, and (2) a certificate from the foreign court affirming the existence of the foreign proceeding and of the appointment of the foreign representative, 11 U.S.C. § 1515(b).  In the absence of such evidence, a court may accept any other sufficient evidence of the existence of the foreign proceeding and appointment of the foreign representative. *Id.*  Additionally, the petition for recognition must "be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. § 1515(c).

The requirements of § 1515 are satisfied because the Petitioner submitted (1) evidence of the commencement of the Russian Proceeding, (2) evidence indicating that the Petitioner was

---

[6] A "foreign proceeding" is defined as "a collective judicial or administrative proceeding in a foreign country . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

[7] A "foreign representative" is defined as "a person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).

7

appointed "financial manager" in the Russian Proceeding, and (3) a statement identifying all foreign proceedings with respect to Zheleznyak.[8] Accordingly, the only disputed issue with regard to the requirements of § 1517(a) is whether the Petitioner has set forth facts sufficient to demonstrate that the Russian Proceeding "is a foreign main proceeding or a foreign nonmain proceeding within the meaning of [§] 1502." 11 U.S.C. § 1517(a)(1).

### C. Foreign Main Proceeding

A foreign main proceeding is "a foreign proceeding pending in the country where the debtor has the center of its main interests [COMI]." 11 U.S.C. § 1502(4). "The party seeking recognition bears the burden of proving COMI by a preponderance of the evidence." *Rozhkov v. Pirogova (In re Pirogova)*, 612 B.R. 475, 481 (S.D.N.Y. 2020) (citations omitted).

COMI "is a term of art, which the Bankruptcy Code does not define explicitly." *Ran*, 607 F.3d at 1022. However, the Code provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). "This presumption can be rebutted by evidence to the contrary." *Ran*, 607 F.3d at 1022 (citing *In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006)). "Habitual residence is 'comparable to domicile,' connotes 'permanence and stability,' and is 'the place where an individual is living and has manifested the expectation of remaining for an indefinite period of time.'" *Pirogova*, 612 B.R. at 481 (quoting *In re Kemsley*, 489 B.R. 346, 353 (S.D.N.Y. 2013)).

"Importantly, COMI is 'determined based on [a debtor's] activities at or around the time the Chapter 15 petition is filed." *Id.* (alteration in original) (quoting *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013)); *see also In re Venus Glob.*

---

[8] All relevant documents were translated into English, as required by § 1515(d).

*Macro Fund, Ltd.*, No. 25-10709, 2026 WL 582870, at *9 (Bankr. D.R.I. Mar. 2, 2026) (quoting

*Fairfield Sentry Ltd.*, 714 F.3d at 133) (agreeing with the majority view that COMI should be

determined as of the time the Chapter 15 petition is filed). However, "a court may consider the

period between the commencement of the foreign insolvency proceeding and the filing of the

Chapter 15 petition" for the purpose of "ensur[ing] that a debtor has not manipulated its COMI in

bad faith." *Pirogova*, 612 B.R. at 481 (quoting *Fairfield Sentry Ltd.*, 714 F.3d at 137).

There is no dispute that, as of the date the Petition was filed, Zheleznyak's habitual

residence was in the United States, not Russia. The Petitioner states in the Petition that Zheleznyak

presently resides in Massachusetts and does not argue that his habitual residence is in Russia.

Accordingly, Zheleznyak's COMI is presumed to be in the United States, which may only be

rebutted with evidence to the contrary. *See* 11 U.S.C. § 1506(c).

However, the Petitioner urges this Court to consider the location of Zheleznyak's creditors

and Zheleznyak's citizenship, ownership of property in Russia, bar association membership, and

income derived from Russian legal work between 2016 and 2019 in determining Zheleznyak's

COMI. But these allegations, taken together, are not sufficient to rebut the presumption that

Zheleznyak's habitual residence, and therefore his COMI, is in the United States.

Although Zheleznyak is a Russian citizen, he ceased maintaining a residence in Russia in

2016, and there is no evidence that Zheleznyak has traveled to Russia since 2016. *See Pirogova*,

612 B.R. at 481–82. Additionally, the income derived from Russia between 2016 and 2019

predates not only the filing of the Chapter 15 petition but may also predate the commencement of

the Russian Proceeding altogether. *See id.* at 482 (finding that debtor's prior business activity in

Russia, and criminal and bankruptcy proceedings she faced as a result, *inter alia*, were "irrelevant

because they predate the filing" of the Chapter 15 petition); *Ran*, 607 F.3d at 1022 (rejecting

9

argument that court should look back to debtor's operational history prior to filing petition to conclude debtor's COMI was in Israel). While not referenced in the Petition, in the Petitioner's objection to Zheleznyak's amended motion for impoundment of certain documents (and also at the April 30, 2026 hearing), the Petitioner urged the Court to consider Zheleznyak's representation that he previously worked for and received income from Media Most International, Inc., a company purportedly owned by a Russian individual. The Petitioner appears to imply that any income received through that employment came from Russia based on the alleged nationality of the company's purported owner. That suggested implication, without additional information, is simply too attenuated to establish that Zheleznyak's COMI is in Russia.

As to the allegation that both of Zheleznyak's creditors are in Russia, "the fact that [Zheleznyak] has ongoing liability for . . . past business activities [does not] establish that Russia is [his] COMI." *Pirogova*, 612 B.R. at 482. And the fact that Zheleznyak owns property in Russia (as the result of legal proceedings initiated by the Petitioner to restore legal ownership to Zheleznyak), without more, cannot support a finding that Zheleznyak's COMI is in Russia. *See id.* (finding that, despite being the registered owner of a Moscow apartment, debtor's lack of meaningful contacts with Russia showed it "was not her home base").

Finally, the Petitioner has cited to no authority in support of the proposition that Zheleznyak's bar association membership, or mere retention of a law license, is probative evidence of an individual's COMI. Without evidence — or even an allegation — indicating that Zheleznyak engaged in the practice of law in Russia and received income as a result between the commencement of the Russian Proceeding and filing of the Petition, Zheleznyak's status as a registered attorney in Russia cannot establish that his COMI is in Russia.

10

In sum, the Petitioner has failed to rebut the presumption that Zheleznyak's habitual residence, and therefore Zheleznyak's COMI, is in the United States. Accordingly, the Russian Proceeding will not be recognized as a foreign main proceeding under § 1517(b)(1).

### D.     Foreign Nonmain Proceeding

A foreign nonmain proceeding is "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). "Courts analyze whether a debtor has an establishment as of the petition date." *Pirogova*, 612 B.R. at 483 (quoting *Bear Stearns*, 389 B.R. at 338). An establishment is defined as "any place of operations where the debtor carries out nontransitory economic activity." 11 U.S.C. § 1502(2).

"Unlike with the determination of COMI, chapter 15 provides no evidentiary presumption in connection with the determination of whether a debtor has an establishment in a particular jurisdiction," *In re British American Ins. Co. Ltd.*, 425 B.R. 884, 915 (Bankr. S.D. Fla. 2010), but "'the bar is rather high' to prove that a debtor has an establishment in a particular location," *Ran*, 607 F.3d at 1026–27 (quoting *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008)). "The petitioner has the burden of proof on whether a debtor has an establishment in the country of the foreign proceeding," *British American Ins. Co. Ltd.*, 425 B.R. at 915, and must satisfy that burden by a preponderance of the evidence, *Beveridge v. Vidunas (In re O'Reilly)*, 598 B.R. 784, 806 (Bankr. W.D. Pa. 2019) (citations omitted).

The Bankruptcy Code does not define "place of operations" or "nontransitory economic activity." *Id.* However, several courts have addressed those terms for purposes of determining whether the "establishment" criterion has been met. "The mere presence of assets in a given location does not, by itself, constitute a place of operation." *Ran*, 607 F.3d at 1027 (citation

11

omitted).  "In the context of corporate debtors, there must be a place of business for there to be an establishment."  *Id.* (citations omitted).  "Equating a corporation's principal place of business to an individual debtor's primary or habitual residence, a place of business could conceivably align with the debtor having a secondary residence or possibly a place of employment in the country where the receiver claims that [the debtor] has an establishment."  *Id.* (citing 11 U.S.C. § 1516(c)).

"To have an establishment in a country, the debtor must conduct business in that country." *In re Creative Finance Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016) (citing *British American Ins. Co. Ltd.*, 425 B.R. at 915).  "The location should constitute a seat for local business activity for the debtor."  *Id.* (quoting *British American Ins. Co. Ltd.*, 425 B.R. at 915).  "The terms 'operations' and 'economic activity' require a showing of a local effect on the marketplace, more than mere incorporation and record-keeping and more than just the maintenance of property."  *Id.* (quoting *British American Ins. Co. Ltd.*, 425 B.R. at 915).

Here, there is no allegation (or evidence) that the property owned by Zheleznyak in Russia served as a secondary residence or place of employment at the time of the Petition.  *See Ran*, 607 F.3d at 1027–28.  The property was returned to Zheleznyak through a Russian court decision in 2023, and there is no allegation that Zheleznyak has been in Russia since becoming owner of the property.  *See id.* (concluding that even if debtor possessed a place of operations in Israel, debtor did not carry out any nontransitory economic activity when the petition was filed).  At most, Zheleznyak's ownership of property in a country to which he has not returned since 2016 represents simply the maintenance of property, which does not demonstrate that Zheleznyak conducted sufficient economic activity to support an establishment in Russia.  *See Creative Finance Ltd.*, 543 B.R. at 520 (citing *British American Ins. Co. Ltd.*, 425 B.R. at 915).

Nor does the Petitioner allege that Zheleznyak conducted any business in Russia at the time the Petition was filed, instead conceding that Zheleznyak has not earned income in Russia since 2019. While the Petitioner relies on the fact that Zheleznyak is an attorney and member of a bar association in Russia, without deriving any income during the relevant time period, such activity does not have a sufficient "local effect on the marketplace," and is tantamount to "mere . . . record-keeping . . . [or] just the maintenance of property." *Id.* (quoting *British American Ins. Co. Ltd.*, 425 B.R. at 915).

In sum, the Petitioner has failed to demonstrate that Zheleznyak had a "place of operations" or carried out "nontransitory economic activity" in Russia as of the filing of the Petition. 11 U.S.C. § 1502(2). Therefore, Zheleznyak does not have an "establishment" in Russia. *See id.* Accordingly, the Russian Proceeding will not be recognized as a foreign nonmain proceeding under § 1517(b)(2).[9]

IV.   CONCLUSION

For all the foregoing reasons, the Court will deny the Petition and will not recognize the Russian Proceeding as a foreign main proceeding or as a foreign nonmain proceeding under § 1517. Because the Court will not recognize the Russian Proceeding, the additional requests for relief under §§ 1520 and 1521 will also be denied. An order in conformity with this Memorandum will issue forthwith.

---

[9] Because the Court determines that the requirements for recognition set forth in § 1517(a) have not been met, the Court will not address the Zheleznyak's public policy arguments against recognition raised under § 1506.

DATED: May 8, 2026

By the Court,

Elizabeth D. Katz
United States Bankruptcy Judge

14